# Illinois Official Reports

## Appellate Court

---

### *People v. Getter*, 2015 IL App (1st) 121307

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. QUINCY GETTER, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-1307 |
| Filed<br>Rehearing denied | January 6, 2015<br>February 19, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for first-degree murder, attempted murder, aggravated battery with a firearm and aggravated discharge of a firearm where defendant raised a claim of self-defense and was only convicted of aggravated discharge of a firearm, the only charge on which the jury was not instructed that the State had to prove beyond a reasonable doubt that defendant was not justified in using force to defend himself, the conviction for aggravated discharge of a firearm was reversed and the cause was remanded for a new trial, since the failure to provide the jury with a self-defense instruction on the aggravated discharge of a firearm count was plain error and defendant's counsel was ineffective in acquiescing to the erroneous instructions. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-14203; the Hon. Vincent Gaughan, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal     Michael J. Pelletier, Alan D. Goldberg, and David M. Berger, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Joan F. Frazier, and Sheilah O'Grady-Krajniak, Assistant State's Attorneys, of counsel), for the People.

Panel     JUSTICE ELLIS delivered the judgment of the court, with opinion.* Presiding Justice Fitzgerald Smith and Justice Epstein concurred in the judgment and opinion.

**OPINION**

¶ 1     During an altercation on February 2, 2010, defendant Quincy Getter shot and killed Eric Stephens and wounded Stephens' cousin, Ronald Funches. Teneshia Hooper, Stephens' mother, was present when defendant shot Stephens and Funches. The State charged defendant with first-degree murder with respect to Stephens, attempted murder and aggravated battery with a firearm with respect to Funches, and aggravated discharge of a firearm with respect to Hooper.

¶ 2     At trial, defendant never denied firing the weapon and relied exclusively on a self-defense theory. In the issues instructions for three of the four offenses charged–first-degree murder, attempted murder, and aggravated battery–the jury was instructed that the State was required to prove beyond a reasonable doubt that defendant was not justified in using force to defend himself. In the fourth issues instruction, for aggravated discharge of a firearm, the jury received no such instruction. The jury acquitted defendant on the three charges for which it received a self-defense instruction and convicted him on the one count for which it did not receive that instruction.

¶ 3     This appeal revolves around this missing self-defense instruction on the aggravated discharge count, couched both as an evidentiary error and as an ineffective-assistance-of-counsel argument, because defense counsel below failed to tender that instruction or object to its absence. We hold both that the failure to provide the jury with a self-defense instruction on the aggravated discharge count was plain error and that counsel was ineffective for acquiescing to the erroneous instructions. We reverse defendant's conviction for aggravated discharge of a firearm and remand for a new trial.

¶ 4                      I. BACKGROUND

¶ 5                      A. Evidence at Trial

¶ 6     Teneshia Hooper testified that, shortly after noon on February 2, 2010, she received a phone call from her son, Eric Stephens, asking her to pick him up from his friend's house at

---

*This case was recently reassigned to Justice Ellis.

- 2 -

8353 South Hermitage Avenue in Chicago. Hooper drove to the house and exited the car so that she could wipe snow off the back window. A few minutes later, Stephens and his cousin, Ronald Funches, came out of the house. Funches got in the backseat of the car. As Stephens was getting in the car, defendant approached him and said, "[C]heck it out." Stephens then went to talk with the defendant.

¶ 7        Hooper testified that, while Stephens spoke with defendant, she continued wiping snow off the back window of the car. She heard them raise their voices and say something about walkie-talkies. Hooper testified that she never heard Stephens threaten defendant, she did not see him touch defendant, and she did not see him pull out a weapon.

¶ 8        As Stephens started toward the car, Hooper heard Funches say, "Frankie, watch out." Hooper testified that she saw defendant pull a gun out of his pocket and shoot Stephens twice in the back. Stephens ran to the car and got in the front passenger's seat. Hooper testified that defendant then started shooting at her. Hooper jumped into the car and drove away as defendant continued firing. Hooper said that one of his shots went through the rear passenger's side window and struck Funches in the back.

¶ 9        Funches testified that, around noon on February 2, 2010, Hooper arrived to pick him and Stephens up from 8353 South Hermitage. When Funches and Stephens left the house, defendant was outside. Funches had seen defendant two or three times before, but had never spoken with him. Funches testified that, prior to February 2, 2010, he had never been involved in any altercations or fights with defendant.

¶ 10        Funches said that defendant approached Stephens as Stephens walked to Hooper's car. Funches got in the rear passenger's seat of the car and rolled down the window so that he could hear their conversation. He heard defendant ask Stephens whether Stephens was the one "that broke in one of their guy's house [*sic*]." Stephens said he was not and defendant asked, "Why you break in, why did you break in folks' crib, man?" Stephens replied that he did not have anything to do with the break-in. Funches testified that he did not see Stephens with a gun. He also did not see Stephens threaten defendant in any way or move toward him.

¶ 11        After the conversation, Stephens turned toward Hooper's car. Funches testified that he saw defendant draw a .32-caliber revolver from his right jacket pocket and shoot Stephens in the back. Stephens fell into the front passenger's seat of the car. Defendant then aimed and fired toward the back of the car, where Funches was sitting. He shot out the back window and hit Funches in the back of his shoulder. He also aimed and fired at Hooper, who was still standing outside of the car. Hooper got in the car and drove away.

¶ 12        The State's final occurrence witness, Lawrence Kennedy, testified that he resided at 8353 South Hermitage. On February 2, 2010, Stephens and Funches were at his house visiting his fiancée's nephew. Stephens and Funches left at around 1 p.m. About 10 seconds after they left, Kennedy walked to the front door, because he also planned to leave. Through the glass window of his front door, he saw Hooper's car. Hooper, Stephens, and defendant were standing nearby, and Funches was sitting in the car.

¶ 13        Kennedy testified that he saw Stephens have a brief conversation with defendant and then attempt to enter the car. While Stephens had his back turned, defendant pulled a gun out of his jacket pocket and fired at Stephens. Kennedy testified that defendant also fired at Hooper, who was still outside the car, and at Funches, who was in the backseat of the car. The car drove away, and Kennedy saw defendant flee on foot. In total, Kennedy heard defendant fire

five or six shots. Kennedy said that he did not see Stephens physically attack defendant and did not see anyone pull a gun on defendant.

¶ 14     Officer James Nichols of the Chicago police department testified that, at 1 p.m. on February 2, 2010, he responded to a call that a man had been shot. Nichols arrived at 7900 South Hermitage Avenue, where he saw Stephens in Hooper's car, unresponsive. Funches, who had also been shot, stood outside the car. Both Stephens and Funches were taken to the hospital, where Stephens was pronounced dead.

¶ 15     Defendant took the stand in his own defense. He testified that, in January 2010, someone broke into his cousin's house. Various items were stolen, including some walkie-talkies. Defendant viewed security camera footage of the thief exiting the house and recognized the thief as Stephens.

¶ 16     Defendant stated that, about a week after the burglary, Stephens and Funches attacked him as he left a store. Stephens asked defendant why defendant had accused him of burglarizing defendant's cousin's house. Defendant replied that he had seen Stephens on the surveillance footage. Stephens said, "You and your cousin going [*sic*] to get fucked up if you keep sayin' [*sic*] my name." Defendant testified that Stephens punched him in the face. Funches grabbed defendant from behind and slammed him to the ground, dislocating his shoulder.

¶ 17     After the fight, defendant went home. He testified that he waited until the next morning to go to the hospital because he thought that Stephens and Funches might still be outside. When defendant returned from the hospital, two friends told him that Stephens and Funches had driven by earlier that day looking for him. His friends said that Stephens had a pistol in his lap. After hearing this, defendant borrowed a pistol from a friend for protection.

¶ 18     Defendant testified that, on February 1, 2010, he was on the porch of the house at 8353 South Hermitage when Stephens and Funches pulled up in a car. Stephens lowered his window and said, "I know you ain't scared." Defendant, fearing that they would start shooting, went inside.

¶ 19     The next day, February 2, 2010, defendant was on the sidewalk outside 8353 South Hermitage when he saw Stephens and Hooper get out of a nearby parked car. Defendant testified that Stephens walked toward him and said, "Y'all [*sic*] bitch ass, steady putting my name *** out there, putting my name and shit. What you all gonna [*sic*] do?" Stephens had his hands in his pockets but defendant could see the handle of a gun in Stephens' hand.

¶ 20     Defendant testified that he drew his own gun and began firing because he was afraid that Stephens would shoot him. Because his arm was dislocated, he could not lift and aim the gun, so he was "shooting wild." Defendant asserted that he "wasn't aiming at [Stephens]" as he fired. Defendant testified, "I was trying to get him up off of me so I could, you know what I'm sayin' [*sic*], run away." As defendant fired, Stephens ducked, turned, and tried to run behind the car. Defendant continued firing while backing away. When defendant reached the corner, he ran. At the time, defendant did not think he had shot anyone.

¶ 21     Defendant testified that, as he fled, he saw his friend Cal in a car. Defendant jumped in Cal's car and Cal brought defendant to his house in De Kalb County. Defendant explained that he did not call the police after the incident because he was on parole and was not allowed to have a gun. He also did not think that the police would believe his account of events. Defendant asserted that he did not go to De Kalb County to evade the police; he left to get

away from Stephens and Funches because he thought they would come back for him.

¶ 22                           B. Jury Instructions, Closing Arguments, and Deliberations

¶ 23    At the close of defendant's case, the State tendered, and the trial court accepted, a jury instruction defining self-defense, Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 24-25.06): "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend [himself] against the imminent use of unlawful force."

¶ 24    In addition to the general definition of self-defense, the State's issues instructions for first-degree murder, attempted first-degree murder, and aggravated battery with a firearm each included an instruction that, along with proving the elements of the offense, "the State must prove the following proposition[ ]: *** That the defendant was not justified in using the force which he used."

¶ 25    The State's issues instruction for aggravated discharge of a firearm, however, did not include any specific instruction or reference to self-defense. On the aggravated discharge count, the jury was merely instructed:

> "To sustain the charge of aggravated discharge of a firearm, the State must prove the following propositions:
>
> *First*: that the defendant knowingly discharged a firearm; and
>
> *Second*: that the defendant discharged a firearm in the direction of another person.
>
> If you find from your consideration of all the evidence that each one of those propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 26    Defendant did not proffer a self-defense instruction for the aggravated discharge count and did not object to the State's instructions. The trial court accepted these instructions.

¶ 27    In closing argument, the assistant State's Attorney proceeded sequentially through the four offenses charged. In his discussion of each of the first three offenses–first-degree murder, attempted first-degree murder, and aggravated battery with a firearm–he tracked the jury instructions and discussed the State's burden of proving that defendant was not justified in his use of force.

¶ 28    With regard to the charge of aggravated discharge of a firearm, the prosecutor, again tracking the jury instructions, made no mention of self-defense, much less the State's burden to prove the lack thereof: "We must prove two propositions[:] that the defendant knowingly discharged a firearm; and second that he discharged a firearm in the direction of another person. Ladies and gentlemen, all that means is a person shooting at another person in another person's direction. *** He knowingly discharged, fired that gun in her direction. He is guilty of aggravated discharge of a firearm as well."

¶ 29    Defense counsel exclusively focused on self-defense and defendant's reasonable belief that his life was in danger. She did not walk the jury through the instructions or discuss the elements of the crimes charged. She concluded by mentioning that the jury would be receiving an instruction "about when someone is justified in the use of force," then argued

that defendant "was absolutely justified. It was reasonable. It was rational and he had no other option." Counsel concluded by asking that defendant be found "not guilty as to all charges."

¶ 30    During deliberations, the jury sent the following note to the trial court: "For the charge of aggravated discharge of a firearm, must we find that the defendant discharged the firearm in the direction of Teneshia Hooper, or can we find (is it sufficient to find) that the defendant fired in the direction of Ronald Funches and/or Eric Stephens?" Without objection from defense counsel, the trial court replied, "The charge of aggravated discharge of a firearm pertains only to Teneshia Hooper and no one else. Please continue to deliberate."

¶ 31    The jury found defendant guilty of aggravated discharge of a firearm but acquitted him of the first-degree murder of Stephens and the attempted murder and aggravated battery of Funches. Defendant appeals his conviction for aggravated discharge of a firearm.

¶ 32                                    II. ANALYSIS

¶ 33    Defendant asserts that the trial court erred in failing to instruct the jury that, to establish the offense of aggravated discharge of a firearm, the State was required to prove, beyond a reasonable doubt, that defendant did not act in self-defense. Defendant concedes that he has forfeited this argument because he did not tender the instruction to the trial court or object to its absence in the State's proffered instructions. Illinois Supreme Court Rule 366(b)(2)(i) (eff. Feb. 1, 1994) provides that "[n]o party may raise on appeal the failure to give an instruction unless the party shall have tendered it."

¶ 34    Nevertheless, defendant asks this Court to review this issue under Illinois Supreme Court Rule 451(c) (eff. July 1, 2006). Rule 451(c) provides an exception to forfeiture where the jury instructions in a criminal case suffer from "substantial defects." *Id.* This exception "is coextensive with the plain-error clause of Supreme Court Rule 615(a)." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010); *People v. Anderson*, 2012 IL App (1st) 103288, ¶ 43. Before determining whether an alleged error rises to the level of a "substantial defect" or "plain error," we must first decide whether any error occurred at all. *Sargent*, 239 Ill. 2d at 189.

¶ 35                        A. Whether the Court Committed Error

¶ 36    We review *de novo* the question of whether the jury instructions accurately stated the applicable law to the jury. *People v. Parker*, 223 Ill. 2d 494, 501 (2006). We begin with the observation, not contested by the State, that self-defense is a proper affirmative defense to the crime of aggravated discharge of a firearm. See *People v. Kasp*, 352 Ill. App. 3d 180, 191 (2004) (interpreting the aggravated discharge of a firearm statute to apply only to firing a firearm "without lawful authority," thereby excluding the firing of a weapon in self-defense (internal quotation marks omitted)). In this case, the justification for defendant's use of force toward Stephens would transfer to Hooper, the unintended victim of the aggravated discharge of a firearm. Under the doctrine of "transferred intent," the "specific intent to kill one person in self-defense [may] be transferred to third parties ultimately affected by the acts of self-defense." *People v. Smith*, 94 Ill. App. 3d 969, 973 (1981); see also *People v. Conley*, 306 Ill. App. 3d 1, 7 (1999) ("[D]efendant can be exonerated of attempted murder if he shoots an assailant in self-defense but injures another; defendant's intent to shoot his assailant in self-defense is transferred to the unintended victim.").

- 6 -

¶ 37 Nor can there be any question here that defendant laid a sufficient evidentiary foundation for self-defense. The State conceded as much when it tendered self-defense instructions for the other three offenses, which the trial court accepted. That same evidence supported a self-defense instruction for the remaining count, aggravated discharge of a firearm related to Hooper. Defendant need only present "some evidence" to support that defense (see *People v. Lee*, 213 Ill. 2d 218, 224 (2004)) and defendant easily met that burden.

¶ 38 Once the defense properly raises the affirmative defense of self-defense, the State bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. *Id*. The jury, then, must be instructed as to this defense and the State's corresponding burden of proof. See *People v. Green*, 225 Ill. 2d 612, 622 (2007) ("[T]o ensure a fair trial, the trial court must instruct the jury on such basic matters as the elements of the offense, the presumption of innocence, and the burden of proof."). "It is of the essence of a fair trial that 'the jury not be permitted to deliberate a defendant's guilt or innocence of the crime charged without being told the essential characteristics of that crime.' " *People v. Ogunsola*, 87 Ill. 2d 216, 222 (1981) (quoting *People v. Lewis*, 112 Ill. App. 2d 1, 11 (1969)).

¶ 39 Illinois Supreme Court Rule 451(a) (eff. July 1, 2006) requires that the trial court use the Illinois Pattern Jury Instructions, Criminal, related to a subject when "the court determines that the jury should be instructed on the subject." IPI Criminal 4th No. 24-25.06 provides the general definition of self-defense, which the trial court properly gave in this case. But the Committee Note to that instruction directs the trial court to also "[g]ive Instruction 24-25.06A" when instructing the jury regarding self-defense. IPI Criminal 4th No. 24-25.06, Committee Note. That instruction, Illinois Pattern Jury Instructions, Criminal, No. 24-25.06A (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 24-25.06A), is to be given "as the final proposition in the issues instruction for the offense charged" (IPI Criminal 4th No. 24-25.06A, Committee Note) and states, "____ *Proposition*: That the defendant was not justified in using the force which he used."

¶ 40 Thus, beyond giving a general definition of self-defense and a general instruction on the State's burden of proof, the trial court should include an issues instruction for each applicable offense that the State bears the burden of proving, beyond a reasonable doubt, that defendant lacked justification in using the force he used. *People v. Bigham*, 226 Ill. App. 3d 1041, 1046 (1992).

¶ 41 We hold that the failure to include this self-defense instruction in the issues instruction for aggravated discharge of a firearm was error. Where three of the four charged offenses included a self-defense instruction, but the remaining aggravated discharge instructions did not, a rational juror employing elementary rules of logic could–in fact, should–find that omission to be meaningful. By far the most logical and coherent interpretation of these jury instructions, as a whole, would be a legally incorrect one: that self-defense was not an affirmative defense to the aggravated discharge count. This error was of particular significance given that self-defense was the central disputed issue at trial. See *Ogunsola*, 87 Ill. 2d at 223 (omission of instruction that State must prove intent to defraud, in prosecution for deceptive practices, was grave error where "[t]he principal contested issue *** was whether [defendant] had the intent to defraud. We think that fundamental fairness required that the jury be instructed on this issue.").

¶ 42    We find support principally in three decisions. In the case with the facts and reasoning most squarely on point, *People v. Wells*, 110 Ill. App. 3d 700, 701 (1982), defendant was convicted of involuntary manslaughter and armed violence but acquitted of murder. The jury received a self-defense instruction for the murder charge but not for the involuntary manslaughter or armed violence counts. *Id.* at 707. The court reversed the convictions, finding the absence of a self-defense instruction in the counts for which defendant was convicted, compared to its presence in the murder count of which he was acquitted, incorrectly signaled to a diligent juror that the State was not required to prove lack of self-defense for involuntary manslaughter or armed violence. *Id*.

¶ 43    In *People v. Thurman*, 104 Ill. 2d 326, 328 (1984), defendant was charged with murder, voluntary manslaughter, involuntary manslaughter, and armed violence stemming from a shooting outside a tavern. Defendant claimed self-defense at trial. *Id.* The issues instructions for murder, voluntary manslaughter, and armed violence predicated on voluntary manslaughter informed the jury that the State bore the burden of proving that defendant acted without lawful justification. *Id.* at 328-29. The issues instructions for involuntary manslaughter and armed violence predicated on involuntary manslaughter, however, did not. *Id.* at 329. Defendant was acquitted of all counts for which he received a self-defense instruction and convicted of those for which no self-defense instruction was given. *Id.* The Illinois Supreme Court found error in the instructions and reversed defendant's convictions. *Id.* at 331-32. Despite the fact that the definition of involuntary manslaughter, itself, included the language "without lawful justification," the court nevertheless reasoned that "unless similar language appears in the issues instruction for that offense[,] a prudent juror could easily conclude that the absence of self-defense need not be found before returning a guilty verdict." (Internal quotation marks omitted.) *Id*. at 331.

¶ 44    Finally, in *People v. Berry*, 99 Ill. 2d 499, 500-02 (1984), the defendant argued self-defense at a trial in which he was convicted of murder and armed violence. The jury instructions included general instructions on burden of proof and the elements of the crimes charged, but the jury was not given the instruction that the State bore the burden of proving lack of self-defense beyond a reasonable doubt. *Id*. at 502-03. Moreover, neither defense counsel nor the prosecutor, in closing arguments, explained this principle of law. *Id*. at 505-06. The Illinois Supreme Court reversed defendant's convictions, finding the failure to instruct the jury on self-defense in the issues instructions to be a "critical error which severely threatened the fundamental fairness of the defendant's trial." (Internal quotation marks omitted.) *Id*. at 507.

¶ 45    We reject the State's arguments that no error occurred here. The State claims, among other things, that defense counsel's closing argument cured any confusion. But as described above, defense counsel did not delve into the minutiae of the instructions or the elements of any of the charged offenses. She argued in support of defendant's justification for his use of force and did, of course, ask that her client be found not guilty "of all charges." The prosecutor, on the other hand, carefully analyzed the elements of each offense, as noted above, specifically discussing the self-defense argument for the other three offenses and omitting any reference to it in his discussion of the aggravated discharge count. The defense attorney's final, generalized plea for an acquittal on all counts did not offset the prosecutor's detailed review of the misleading jury instructions, much less the erroneous instructions themselves. It is worth noting that in *Wells*, the defense attorney discussed the State's burden of proving the lack of self-defense on the involuntary manslaughter and armed violence

- 8 -

charges in far more detail than did defense counsel here, but the court was not persuaded that it overcame the faulty jury instructions. *Wells*, 110 Ill. App. 3d at 707.

¶ 46 The State further argues that the jury instructions "as a whole" were sufficient to instruct the jury on the law, due to the presence of the general definition of self-defense, IPI Criminal 4th No. 24-25.06, coupled with the instruction assigning the burden of proof to the State at all times. These instructions, the State claims, properly instructed the jury that the State bore the burden to prove the lack of justification for the shooting. The error, however, is not that the jury misconstrued the meaning of "self-defense" or reassigned the burden of proof. The error is that the jury had no way of knowing that the defense of self-defense *applied* to the aggravated discharge claim, because the most reasonable reading of the instructions, "as a whole"–incorporating a self-defense instruction into three counts but omitting it from the aggravated discharge count–told them that it did not apply.

¶ 47 It is true that, in *People v. Huckstead*, 91 Ill. 2d 536, 545 (1982), the supreme court affirmed defendant's conviction for murder, despite the absence of a self-defense instruction, because of the curative effect of the general self-defense instruction and the instruction on the State's burden of proof, and because of the arguments of counsel in closing argument that correctly stated the law. The critical difference, however, is that the defendant in *Huckstead* was not charged with multiple offenses, some of which contained a self-defense instruction and some of which did not. The jury in *Huckstead* received an issue instruction for murder–albeit one not referencing self-defense–then a definition of self-defense and an instruction on the State's burden of proof. *Id.* No other instructions contradicted those instructions. Self-defense obviously applied to the murder charge because it was the only charge before the jury. In the present case, in contrast, the absence of a self-defense instruction on the aggravated discharge count was conspicuous because the other three charged offenses contained that instruction. Accord *Wells*, 110 Ill. App. 3d at 707 (distinguishing *Huckstead* on the same basis).

¶ 48 Additionally, in *Huckstead*, both the prosecution and defense counsel "repeatedly and specifically" argued to the jury that the State bore the burden to prove the lack of self-defense on the murder charge (*Huckstead*, 91 Ill. 2d at 545) whereas here, the prosecution compounded the error caused by the faulty jury instruction, and defense counsel did not speak to the matter in any meaningful way. See *Berry*, 99 Ill. 2d at 505-06 (distinguishing *Huckstead* on this point). Simply put, the jury in *Huckstead* received no mixed signals, whereas in this matter, the jury received mixed signals at best, if not entirely wrong directions. *Huckstead* does not compel a contrary result.

¶ 49 The cases cited by the State do not advance its cause. In *People v. Berry*, 244 Ill. App. 3d 14, 16 (1991), the defendant challenged the issues instruction for robbery given at his trial. That instruction stated that " 'the State must prove the following propositions' " and listed the two elements of robbery. *Id.* at 28. The concluding paragraph stated, " 'If you find from your consideration of all the evidence that *this proposition* has been proved beyond a reasonable doubt, you should find the defendant guilty.' " (Emphasis in original.) *Id.* The defendant argued that the phrase "this proposition" was erroneous because it implied that he could be convicted if the State proved either element of robbery, not both. *Id.* The court rejected this argument because the instruction began by using the plural "propositions" and it correctly "set[ ] forth the two elements which must be proven." *Id.* at 30. Moreover, the

evidence against defendant was "not closely balanced" and thus, the court was convinced that the result would have been no different with a proper instruction. *Id.*

¶ 50    Similarly, in *People v. Boose*, 256 Ill. App. 3d 598, 601 (1994), the issues instruction for the offense of possession of a controlled substance weighing less than 15 grams stated, " 'If you find from your consideration of all the evidence that *these propositions* have not been proved beyond a reasonable doubt, you should find the defendant not guilty.' " (Emphasis in original.) While noting that the instruction should have made it clear that the jury should acquit if it found that *any one of these* propositions was not proved beyond a reasonable doubt, the court held that the error was not unduly prejudicial because there was only one disputed issue in the case–whether defendant possessed the cocaine, not the weight of the cocaine recovered. *Id.* at 601-03.

¶ 51    The error in this case differs fundamentally from those in the cases the State cites. The instruction in *Berry* was incorrect in one place but correct in the other, and the evidence against defendant, in any event, was strong. The instructional error in *Boose* did not prejudice defendant because there was only one central issue. Thus, in each of those cases, the court concluded that the defendant would have been convicted in any event. The error here, in contrast, failed to instruct the jury on the only contested issue in the case, self-defense. The jury had no reason to know that self-defense was a defense to aggravated discharge of a firearm and, in fact, had every reason to believe it was not. Nor could it be possibly argued here, as was the case in *Berry*, that the evidence strongly favored the State, given that defendant in this case was acquitted on every count for which a self-defense instruction was given.

¶ 52    Finally, the State relies on *Sargent*, 239 Ill. 2d at 188, 192, where defendant argued that his convictions for predatory criminal sexual assault and aggravated sexual abuse should be reversed because the trial court failed to tender to the jury Illinois Pattern Jury Instructions, Criminal, No. 11.66 (4th ed. 2000), an instruction governing hearsay evidence from a minor victim of sexual abuse. Instead, the court tendered Illinois Pattern Jury Instructions, Criminal, No. 1.02 (4th ed. 2000), a similar, more general instruction on judging witness credibility. *Sargent*, 239 Ill. 2d at 192. While our supreme court found the failure to submit this instruction was error, it held that this error did not rise to the level of plain error because the instruction given, while not identical to the proper instruction, "convey[ed] similar principles regarding the jury's role in assessing witness credibility." *Id.*

¶ 53    We find *Sargent* distinguishable because the jury instructions in the instant case completely omitted the central disputed issue and left the jury with the clear and almost unavoidable impression that the State was not required to prove the absence of self-defense in order to convict defendant of aggravated discharge. In *Sargent*, the jury received an admittedly imperfect instruction, but not a wholly insufficient one, and more importantly not one that impacted the jury's consideration of the elements of the offense or the State's burden to prove those elements. "Jury instructions that incorrectly define the offense cause prejudice to a criminal defendant far more serious than instructions that do not include a definition of a term [citation], or that omit an instruction on a collateral issue [citation]." *Ogunsola*, 87 Ill. 2d at 223.

¶ 54    Accordingly, we hold that the trial court committed error in omitting IPI Criminal 4th No. 24-25.06A from the issues instruction for aggravated discharge of a firearm, while

simultaneously including that instruction in the other three charged offenses.

¶ 55                          B. Whether Plain Error Occurred

¶ 56    Having found that the trial court erred in omitting IPI Criminal 4th No. 24-25.06A, we must still consider whether that error constituted a "substantial defect" under Rule 451(c), warranting an exception to defendant's forfeiture of the issue. We noted previously that this analysis is coextensive with the plain-error doctrine (*Sargent*, 239 Ill. 2d at 189) and thus we will use that terminology.

¶ 57    Plain error occurs in two scenarios: (1) where " 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error' "; or (2) where " 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). While there is some quarrel between the parties as to which prong defendant asserts as a basis for plain error in this case, the substance of his argument falls under the second prong, which does not consider the closeness of the evidence but focuses on the severity of the error and its threat to the fairness and integrity of the trial.

¶ 58    As a preliminary matter, we address the State's position that the error in this case is "not reviewable" under the second prong of plain error. The State claims that the Illinois Supreme Court has limited second-prong plain errors to "structural errors" requiring automatic reversal, and likewise has limited the class of potential structural errors to the six examples identified by the United States Supreme Court: "[T]he complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of the right of self-representation at trial, denial of a public trial, and defective reasonable doubt instructions." *People v. Washington*, 2012 IL 110283, ¶ 59 (citing *Neder v. United States*, 527 U.S. 1, 8-9 (1999)). Because the omission of a jury instruction on self-defense is not one of those six errors, the State claims that the error raised here by defendant cannot, as a matter of law, constitute plain error under the second prong.

¶ 59    This court rejected this argument in *People v. Clark*, 2014 IL App (1st) 123494, ¶¶ 36-40, where we explained that, while it is true that the Illinois Supreme Court has *analogized* second-prong plain error to structural error, it has never *limited* second-prong plain error to those six types of errors, and in fact has found that errors other than those six qualified as second-prong plain error. See *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009) (second-prong plain error resulted from violation of one-act, one-crime rule); *People v. Walker*, 232 Ill. 2d 113, 131 (2009) (failure to grant continuance to defense counsel was second-prong plain error). See also *Thompson*, 238 Ill. 2d at 610-15 (analogizing structural error to second-prong plain error, but independently analyzing alleged error under each doctrine).

¶ 60    The State's argument is also contradicted by the principal case it cites on the issue of second-prong plain error, *People v. Sargent*, 239 Ill. 2d 166. In *Sargent*, the asserted error concerned the trial court's failure to give a jury instruction on hearsay statements made by a child sex-abuse victim. *Id.* at 188. The supreme court wrote that the omission of a jury instruction rises to the level of second-prong plain error "when the omission creates a serious

- 11 -

risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Id*. at 190-91. That test would be unnecessary if, as the State urges, the only question on second-prong plain error was whether the alleged error in jury instructions fell within one of the six previously-specified categories of structural error. The supreme court could have answered that question in one sentence and rejected the defendant's second-prong argument on that basis alone. Instead, the Court conducted a lengthy analysis of each of the two prongs of plain error, ultimately rejecting them on the merits. *Id*. at 190-93.

¶ 61    What is troubling about the State's position is not only that this court has previously rejected it, but the magnitude of what the State is suggesting here: It would close the door, without any substantive analysis, to appellate review of the vast majority of second-prong plain errors relating to jury instructions. As we understand the State's argument, for any asserted second-prong plain error brought under Rule 451(c), the State would have us do nothing more than check a defendant's argument against the list of six enumerated "structural" errors, and if we do not find a match, the defendant is stopped in his or her tracks. Moreover, given that Rule 451(c) only governs jury instructions, and given that only one of the six enumerated structural errors even remotely concerns jury instructions–the last one, a defective reasonable-doubt instruction–in effect a second-prong plain error analysis under Rule 451(c) would now be reduced down to one and only one error. If the alleged plain error was a defective reasonable-doubt instruction, the conviction is automatically reversed; any other error in jury instructions, no matter how egregious, no matter how flagrant the violation of defendant's rights, is automatically rejected. Aside from constituting a dramatic restriction of Rule 451(c), that result would effectively overrule a slew of supreme and appellate court plain-error decisions on defective jury instructions, only a handful of which we have cited in this opinion. See, *e.g.*, *Thurman*, 104 Ill. 2d 326; *Berry*, 99 Ill. 2d 499; *Wells*, 110 Ill. App. 3d 700; *Ogunsola*, 87 Ill. 2d at 222-23 (failure to instruct jury on element of intent to defraud, in prosecution for deceptive practices, was plain error).

¶ 62    Having rejected the State's attempt to eliminate our review of this issue, we next consider whether the error committed below rises to the level of plain error. As we noted above, in order to show second-prong plain error resulting from the omission of a jury instruction under Rule 451(c), defendant must establish that there was a "serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law." *Sargent*, 239 Ill. 2d at 191. Defendant need not "prove beyond doubt that [his] trial was unfair because the omitted instruction misled the jury to convict [him]." *People v. Hopp*, 209 Ill. 2d 1, 12 (2004). Rather, defendant must show that the omitted instruction created a "severe threat to the fairness of [his] trial." (Emphasis omitted.) *Id*.

¶ 63    The cases we reviewed above, in reaching our conclusion that the trial court erred in failing to include a self-defense instruction in the issues instruction for aggravated discharge, likewise support a finding of second-prong plain error in this case. See *Wells*, 110 Ill. App. 3d at 708 (omission of self-defense instruction for involuntary manslaughter and armed violence counts, coupled with presence of that instruction in murder charge, constituted plain error under second prong); *Berry*, 99 Ill. 2d at 505-06 (lack of self-defense instruction on murder and armed violence counts was second-prong plain error); *Thurman*, 104 Ill. 2d at 330-31 (finding of plain error appeared to rely on second prong, given court's focus on gravity of error and not closeness of evidence). See also *People v. Hale*, 2012 IL App (4th)

100949, ¶ 25 (omission of instruction on element of offense for threatening public official was second-prong plain error).

¶ 64 We agree with these decisions and hold that second-prong plain error occurred here. The inclusion of a self-defense instruction for the other three offenses, but its omission in the sole count of which defendant was convicted, created a serious risk that the jury convicted defendant because it did not understand that self-defense was a defense to the aggravated discharge count.

¶ 65 As did the courts in *Wells* and *Berry*, we further find that this error would constitute first-prong plain error, because the evidence at defendant's trial was closely balanced. See *Wells*, 110 Ill. App. 3d at 708; *Berry*, 99 Ill. 2d at 506. Defendant's trial constituted a credibility contest between him and the State's occurrence witnesses. See *People v. Naylor*, 229 Ill. 2d 584, 606-07 (2008) (evidence at trial was closely balanced where "the trial court's finding of guilty necessarily involved the court's assessment of the credibility of *** two [police] officers against that of defendant"); *People v. Miller*, 2013 IL App (1st) 110879, ¶¶ 56, 58 (evidence at trial was closely balanced where "the trial court's determination of guilt was dependent on which witnesses were most credible" and "[d]efendant's explanation [was] a reasonable one"). In the instant case, Hooper, Funches, and Kennedy testified that defendant shot Stephens and that they did not see Stephens brandish a gun or threaten defendant. Defendant, however, testified that Stephens had his hand on a gun in his pocket and that he fired at Stephens to protect himself. Defendant's testimony was not wholly implausible or unreasonable. None of the physical evidence refuted defendant's testimony. Importantly, the jury's verdicts as to the murder, attempted murder, and aggravated battery with a firearm charges suggest that it is likely that the jury either credited portions of defendant's account or disbelieved portions of the State's witnesses' testimony. Given the closeness of the evidence at defendant's trial, the erroneous omission of IPI Criminal 4th No. 24-25.06A could well have been the thumb that "tip[ped] the scales of justice against the defendant." (Internal quotation marks omitted.) *Thompson*, 238 Ill. 2d at 613.

¶ 66 The State argues that, even if we were to find error in this case, we should not find plain error. The State reasons that it is not clear that defendant's acquittals on the murder, attempted murder and aggravated battery counts were based on defendant's self-defense argument, and thus defendant cannot show that he would have been acquitted on the aggravated discharge count had he received a self-defense instruction. It is possible, the State claims, that the jury exonerated defendant of the greater charges but convicted him of aggravated discharge because it believed that defendant fired the gun but lacked the intent to kill.

¶ 67 The possibility that the jury reached that conclusion is remote at best. The State's argument overlooks the fact that the jury did not have to find intent to kill to convict this defendant of murder. The jury was instructed that all it had to find was that defendant knew "that [his] acts create[d] a strong probability of death or great bodily harm to" Stephens. See 720 ILCS 5/9-1(a)(2) (West 2010). Given defendant's admission that he fired the gun–that he was "shooting wild" in the direction of three people–defendant would have been hard-pressed to claim that he did not know there was a strong probability of death or great bodily harm resulting from those shots. Indeed, he did not make that claim in his testimony, nor did his defense counsel press that issue in closing arguments. The only truly contested issue standing between defendant and a first-degree murder conviction was his self-defense

argument. It seems highly unlikely that the jury acquitted defendant of first-degree murder *not* because it accepted his self-defense story, but rather because it believed that defendant *both* (a) did not intend to kill Stephens *and* (b) was unaware that pulling the trigger several times created a strong probability of death or great bodily harm to Stephens.

¶ 68        The State further speculates that the jury's verdict may have been the product of "lenity." Citing *People v. Jones*, 207 Ill. 2d 122, 134 (2003), the State claims that legally inconsistent verdicts may be the product of juror lenity, but they cannot be the basis for appellate reversal. This case, however, does not involve inconsistent verdicts. The jury's verdicts may be consistently read as a misinterpretation of the law of self-defense brought about by the erroneous omission of IPI Criminal 4th No. 24-25.06A from the issues instruction for aggravated discharge of a firearm.

¶ 69        The State may throw out all the speculation it wishes–that the jury thought intent was not proven; that the jury engaged in some kind of inconsistent, compromise verdict–but the vital point is that defendant is not required to prove beyond any doubt that he would have been acquitted with a proper jury instruction. *Hopp*, 209 Ill. 2d at 12. Rather, defendant must establish that there was a "serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law." *Sargent*, 239 Ill. 2d at 191. Because the jury acquitted defendant of the three offenses for which a self-defense instruction was given and convicted him only on the count in which the self-defense instruction was erroneously absent, we find that defendant has easily demonstrated that serious risk in this case.

¶ 70                                C. Whether Counsel Was Ineffective

¶ 71        Even if we were to conclude that the omission of the self-defense instruction was not plain error, defendant would still be entitled to a new trial because his attorney was ineffective in failing to ensure that the jury was properly instructed. At trial, defendant's attorney pursued a self-defense theory. Yet counsel failed to submit the self-defense instruction in the issues instruction for aggravated discharge of a firearm. As a result, the jury was not fully instructed as to the defense counsel elected to pursue. Defendant was undoubtedly prejudiced by that failure: he was convicted of the one offense with an incomplete instruction.

¶ 72        To establish a claim of ineffective assistance of trial counsel, defendant must show that his attorney's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). To establish deficient performance, defendant must show that his attorney's performance "fell below an objective standard of reasonableness," measured "under prevailing professional norms." *Id.* at 688. Defendant must also overcome the presumption that his attorney's decisions were an exercise of reasonable trial strategy. *Id.* at 689. To establish prejudice, defendant must show that there was a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 73        By failing to submit instructions that fully apprised the jury of her client's defense, or to object to the State's faulty instructions, trial counsel performed deficiently. During closing argument, defense counsel argued that defendant was justified in using force. She pursued no other theory and submitted no alternative argument. In fact, she went so far as to tell the jury it would be receiving an instruction "about when someone is justified in the use of force."

- 14 -

Yet, when the time came to instruct the jury on that defense, counsel acquiesced to the State's proposed issues instruction for aggravated discharge of a firearm, which erroneously excluded the proposition that the State must prove the absence of self-defense beyond a reasonable doubt. "This court has held that '[w]here defense counsel argues a theory of defense but then fails to offer an instruction on that theory of defense, the failure cannot be called trial strategy and is evidence of ineffective assistance of counsel.' " *People v. White*, 2011 IL App (1st) 092852, ¶ 65 (quoting *People v. Serrano*, 286 Ill. App. 3d 485, 492 (1997)). Thus, counsel's performance was objectively unreasonable.

¶ 74    In *People v. Gonzalez*, 385 Ill. App. 3d 15 (2008), this court held that a nearly identical error was ineffective assistance of counsel requiring a new trial. There, the defendant had been charged with aggravated criminal sexual abuse, and defense counsel requested a jury instruction for the defense that the defendant reasonably believed that the victim was over 17. *Id.* at 16-17. However, defense counsel did not submit any proposed instructions, stating that he "did not go through all of them." (Internal quotation marks omitted.) *Id.* at 17. The trial court gave a general instruction on the defense, but did not include the following language in the issues instruction for the offense: " '*Fourth Proposition*: That the defendant did not reasonably believe [the victim] to be [17] years of age or older.' " *Id.* at 20-21 (quoting Illinois Pattern Jury Instructions, Criminal, No. 11.62A (4th ed. 2000)). This court found that the omission of that proposition constituted "serious error" because it deprived the jury of the "necessary tools to analyze the evidence and to reach a verdict based on those facts." (Internal quotation marks omitted.) *Id.* at 21. This court rejected the notion that the omission could be considered a reasonable strategy because counsel failed to properly instruct the jury on his own chosen defense. *Id.* This court further held that this failure resulted in prejudice because the absence of the proposition "removed from the jury's consideration a disputed issue essential to the determination of defendant's guilt or innocence," and that the State's evidence was not overwhelming. (Internal quotation marks omitted.) *Id.* at 22.

¶ 75    Counsel's error in this case was even more unreasonable than counsel's error in *Gonzalez*. Whereas counsel in *Gonzalez* seemed unaware of the necessary instructions to support his defense, counsel in this case had the benefit of the correct issues instructions for murder, attempted murder, and aggravated battery with a firearm. Seeing those instructions, it was plain that something was missing from the aggravated discharge of a firearm issues instruction. Yet counsel did nothing to ensure that instruction was complete. Either counsel believed that self-defense did not apply to aggravated discharge of a firearm, which is inaccurate, or counsel did not adequately review the instructions. In either case, counsel did not attempt to provide the jury with the necessary tools to evaluate her client's defense.

¶ 76    Moreover, the prejudice to defendant in this case is far greater than the prejudice to the defendant in *Gonzalez*. Not only was the jury deprived of the necessary instructions to decide this case, but the record strongly suggests that the jury would have acquitted defendant entirely if it had those instructions. As we explained above, the inclusion of the self-defense instruction in all but one issues instruction signaled to the jury–incorrectly–that self-defense was not a defense to aggravated discharge of a firearm. The jury then convicted defendant of the sole offense with an improper issues instruction. Given the probable effect of counsel's error, we have no confidence in the outcome of defendant's trial. Defendant is entitled to a new trial based upon his attorney's ineffectiveness.

## III. CONCLUSION

For the reasons stated above, we hold that the trial court committed plain error in omitting IPI Criminal 4th No. 24-25.06A from the issues instruction for aggravated discharge of a firearm while simultaneously including it in the issues instructions for the other charges against defendant. We also hold that defendant's trial attorney was ineffective for failing to object to the deficient instructions or to tender proper instructions. We reverse defendant's conviction for aggravated discharge of a firearm and remand for a new trial on that offense. As the evidence against defendant, if believed, was sufficient to convict him of aggravated discharge of a firearm with respect to Hooper, double jeopardy does not bar his retrial for that offense. *People v. Ward*, 2011 IL 108690, ¶ 50.

Reversed and remanded.