**The People of the State of Illinois, Plaintiff-Appellee, v. Lewis Clinton Billingsley, a/k/a Lew Billingsley, Defendant-Appellant.**

**Gen. No. 65–61–M.**

Second District.

February 1, 1966.

John D. Vosnos, of Chicago, for appellant.

Bruno W. Stanczak, State's Attorney, and Jack Hoogasian, Assistant State's Attorney, both of Waukegan, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a judgment entered on the verdict of the jury, finding the defendant, Lewis Billingsley, guilty of deceptive practices under section 17–1(d) of the Criminal Code (Ill Rev Stats 1963, c 38, par 17–1(d)). The defendant was sentenced to six months at the Illinois State Farm at Vandalia and fined $500.

The charge was based upon a check signed by the defendant and given to William Bicket on November 4, 1964. The check was in the sum of $3,445.58, the amount of the defendant's delinquent telephone bill. Bicket held this check and, on the same day, issued his check to the telephone company in payment of the bill, which had to be paid on this date to prevent defendant's telephone services from being disconnected.

In May of 1964, the defendant met Bicket, who was president of Bicket Enterprises, Inc., comprised of four retail stores, one being a drug store in which he operated a currency exchange. Bicket was acquainted with Mrs. Friend, a business associate of the defendant and had, in essence, extended credit to defendant and Mrs. Friend in a series of twelve or more transactions between May and November in 1964. On these occasions, they represented to Bicket that they needed immediate cash for various purposes. Bicket would then give them his check, which was good, for the sum requested, and take their check in return, which would supposedly be good in the near future. By September 28, 1965, defendant and his associate owed Bicket $17,500 to $24,000 in that apparently a number of their checks had been returned N. S. F.

The defendant testified that he told Bicket that he didn't have the money to pay his telephone bill, but would have the money in a few days; that this conversation took place on the day before he gave Bicket the check in question; that Bicket then stated that he handled telephone bills at the currency exchange and the telephone

company would take his check; that defendant then arranged to give Bicket his check, in the amount of the telephone bill, to hold until it could be made good; and that Bicket agreed to issue his own check in payment of the defendant's bill. According to the defendant, his check was to be held as a note, similar to their prior transactions.

The testimony of Bicket was not as clear or precise as that of the defendant relative to the time of the various conversations and their substance, but a fair inference therefrom is that he was not aware that the defendant did not have funds in the bank to cover his check until after he received the defendant's check, and the telephone company had notified him that it was not good. However, he was aware of this fact prior to submitting his check to the telephone company in payment of the defendant's bill.

Bicket also testified that he never tried to cash defendant's check; and that he took cash, or checks made payable to the telephone company, and not to himself, in payment of other persons telephone bills. Bicket's transaction was unique in regard to the handling of defendant's telephone bill, and he did the same thing again in the latter part of November 1964, in payment of another of defendant's telephone bills in the sum of approximately $3,800. When called in rebuttal by the State, Bicket was not asked to clarify his testimony as to when he was made aware of the fact that there were not sufficient funds in the bank to cover defendant's check.

The defendant's principal contention is that section 17–1(d) of the Criminal Code, which provides that:

> "A person commits a deceptive practice when: With intent to obtain control over property or to pay for property, labor or services of another, he issues or delivers a check or other order upon a real or fictitious depository for the payment of money, know-

ing that it will not be paid by the depository. Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered is prima facie evidence that the offender knows that it will not be paid by the depository; " (Ill Rev Stats 1963, c 38, par 17–1(d)),

is a codification of the law as it existed at the time of the enactment of the Criminal Code. He contends that in order for a criminal offense to occur, a person must issue a check to another, among other things, "with an intent to defraud"; and that the complaint against him was fatally defective in failing to allege that he intended to defraud Bicket in issuing his check and obtaining over $3,445.58 of Bicket's money. The defendant further contends that the jury was grossly misled by the instructions which contained no reference to the various elements of the offense charged, including the intent to defraud.

The statute quoted above makes no reference to an "intent to defraud." It requires only that a person, with an intent to obtain control over property, issue or deliver a check for the payment of money knowing that it will not be paid by the depository. If taken literally, this could be read to mean that a person has committed a criminal offense, who, when issuing his check in return for funds advanced to him, knows that his depository cannot then honor it, and so advises the person to whom the check is issued, and asks him to take and hold it until a specified future date, at which time the check will be good. The statute, so construed, would thus convert the use of a check as a "note," or the creation of a debtor-creditor relationship in such manner, into a criminal offense. Interpreted thusly, the statute would impose absolute liability.

Section 4–9 of the Criminal Code provides:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4–4 through 4–7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." (Ill Rev Stats 1963, c 38, par 4–9.)

The deceptive practice charged in the complaint carries a possible incarceration of up to one year. Thus section 17–1(d) of the Criminal Code does not come under the first clause of Section 4–9 of the Code. If section 17–1(d) is to create absolute liability, it must be that "the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." We do not believe that such is the case.

■ The Committee Comments to section 17–1 state: "Subsection (d) codifies the former section 255 on making bad checks to defraud." (SH Ill Anno Stat, c 38, sec 17–1.) Such comments are an appropriate and valuable source in determining legislative intent. The People v. Touhy, 31 Ill2d 236, 239, 201 NE2d 425 (1964); Moran v. Bowley, 347 Ill 148, 155, 179 NE 526 (1932).

■ Former section 255 commenced by providing: "Any person who with intent to defraud shall make or draw or utter or deliver any check . . . ." The Supreme Court in People v. Balalas, 334 Ill 444, 166 NE 47 (1929), in defining the elements necessary to establish a criminal offense under the statute which was a predecessor to section 255 and substantially the same, set forth as the first of the four essential elements of the offense, "an intent to defraud." We are of the opinion that the legislature did not intend to alter the elements of this offense, at least with reference to "an intent to defraud" in con-

nection with the issuance of a bad check; and that it did not clearly manifest a purpose to impose absolute liability in connection therewith. This view is substantiated by the Committee Comments and the statutory organization and terminology of section 17–1(d).

The defendant contends that the complaint in this case, couched solely within the framework of the statute, was fatally defective. Section 111–3(a) of the Criminal Code provides:

"A charge shall be in writing and allege the commission of an offense by:

(1) Stating the name of the offense;

(2) Citing the statutory provision alleged to have been violated;

(3) Setting forth the nature and elements of the offense charged;

(4) Stating the time and place of the offense as definitely as can be done; and

(5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty." (Ill Rev Stats 1963, c 38, par 111–3(a).)

Prior to the enactment of this Section, an offense was usually charged either in the language of the statute or by setting forth the facts which constituted the crime. The People v. Barnes, 314 Ill 140, 145, 145 NE 391 (1924); also see Committee Comments, SH Ill Anno Stat chap 38, sec 111–3.

■■ It is adequate to allege the offense in the language of the statute when the statute particularizes the offense sufficiently for the defendant to know the precise offense with which he is charged. The People v. Sims, 393 Ill 238, 241, 66 NE2d 86 (1946). Where, however, the statute does not describe the acts which constitute

the crime, or where, by its generality, it may embrace acts which the statute does not intend to punish, a charge solely in the language of the statute is not then sufficient. The People v. Peters, 10 Ill2d 577, 580, 581, 141 NE2d 9, (1957); The People v. Green, 368 Ill 242, 252, 253, 13 NE2d 278 (1938); The People v. Barnes, supra.

 Section 111–3(a) of the Criminal Code now sets forth the requirements in connection with the specification of all criminal charges. It embraces all situations, and compliance therewith satisfies the constitutional requirement that the accused be informed of the nature and cause of the accusation. The complaint against the defendant in this case did not set forth the nature and elements of the offense charged, as required by subparagraph (3) of section 111–3(a). In addition, it embraced acts which it was not the intent of the Code to punish. The question before us, when the sufficiency of a charge is challenged, is whether it complies with the express requirements of the statute.

 The manner of alleging the commission of an offense is that prescribed in section 111–3(a). It specifies that the charge shall allege the commission of an offense by setting forth the five requirements stated therein. A complaint that does not set forth the nature and elements of the offense charged, fails to state an offense and is subject to dismissal under the provisions of section 114–1(a)(8) of the Criminal Code. (Ill Rev Stats 1963, c 38, par 114–1(a)(8).) Whether the various requirements of section 111–3(a) are met, must be determined by the substance of the charge and not the technicalities of its language. The People v. Blanchett, 33 Ill2d 527, 212 NE2d 97 (1965); People v. Petropoulos, 59 Ill App2d 298, 324, 208 NE2d 323 (1st Dist 1965).

We are confronted here with a situation where the defendant at no time challenged the sufficiency of the complaint in the trial court, either by a motion to dismiss or a motion in arrest of judgment. Section 114–1(b)

provides that if a motion to dismiss is not presented within a reasonable time, any grounds therefore, except as to subsections (a)(6) and (a)(8), are waived. Subsection (a)(6) relates to the court not having jurisdiction. Subsection (a)(8) is the section with which we are concerned, and, as indicated above, applies to those cases where "The charge does not state an offense."

██ Here, the complaint failed to set forth all of the elements of the offense charged. The State proceeded throughout the trial on the theory that it did not have to prove an intent to defraud. The complaint made no reference to such intent. On a number of occasions, the jury was advised of the language of the complaint, and it was instructed therein. It seems apparent that from the inception of the trial, the jury was given no reason to believe that an intent to defraud was a necessary element of the offense. The failure to charge an offense and the obvious harm to the defendant resulting therefrom, is the kind of defect involved in due process of law and it cannot be waived. Such defect may be attacked at any time, and may be attacked for the first time in this court. The People v. Minto, 318 Ill 293, 296, 149 NE 241 (1925); People v. Petropoulos, supra, 324.

This view is supported by the Committee Comments to section 114–1 (SH Ill Anno Stat c 38, section 114(1)) which state:

"Subsection (a)(8) permits the motion to dismiss where the charge does not state an offense. In accordance with Article III, charge refers to the complaint, indictment or information. Since a charge which does not state an offense does not give defendant a full notice of why he is being tried, and the charge will not support a judgment unless an offense is stated therein, due process would be violated and may be attacked at any time. (See section 114–1(b) of this Code; and see generally People v. Clark, 256 Ill 14, 99 NE 866 (1912).)"

300

Section 116-2 (Ill Rev Stats 1963, c 38, par 116-2) which allows a motion in arrest of judgment when the "indictment, information or complaint does not state an offense," and section 114-1(b) precluding the waiver of such omission, add emphasis to the manifest necessity of setting forth the nature and elements of the offense charged as required by section 111-3(a)(3). People v. Blanchett, supra.

Under prior law, a complaint or information, unlike an indictment, could be amended by leave of court before or during trial. The People v. Clarke, 407 Ill 353, 95 NE2d 425 (1950); People v. Stringfield, 37 Ill App2d 344, 348, 185 NE2d 381 (1st Dist 1962). Section 111-5 of the Code of Criminal Procedure of 1963 (Ill Rev Stats 1963, c 38, par 111-5) authorizes amendment at anytime because of formal, but not substantive, defects in an indictment, information or complaint. See People v. Hall, 55 Ill App2d 255, 259, 204 NE2d 473 (4th Dist 1964). However, the complaint in the case at bar was defective in a substantive matter in that it did not allege a criminal offense. It was not amended in the trial court and we deem it improper to reverse and remand for that purpose. In view of our determination that the complaint was fatally defective, it is improper to remand the cause for the futility of a new trial (People v. Minto, 318 Ill 293, 296, 149 NE 241 (1925)), and we need not consider the other errors assigned herein. Accordingly, the judgment entered on the verdict of the jury herein is reversed.

Judgment reversed.

ABRAHAMSON, P. J. and MORAN, J., concur.