(No. 54346.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. OLUBUKOLA A. OGUNSOLA, Appellant.

*Opinion filed December 4, 1981.*

Daniel D. Yuhas, Deputy Defender, and Gary R. Peterson, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Herbert Lee Caplan, Melbourne A. Noel, Jr., Michael B. Weinstein, and Jonathan Strauss, Assistant Attorneys General, of Chicago), for the People.

MR. JUSTICE CLARK delivered the opinion of the court:

On November 15, 1979, a McLean County jury convicted Olubukola A. Ogunsola of deceptive practices under $150. (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d).) The appellate court affirmed the conviction. (91 Ill. App. 3d 26.) On appeal, defendant contends that his conviction should be reversed because the trial court erroneously gave the jury an instruction that incorrectly defined the offense of deceptive practices, in that it omitted an essential element of that offense.

Testimony at the trial showed that on February 27, 1979, the defendant, a Nigerian exchange student, brought his 1972 Volkswagen Beetle to Mitch's Import Auto Center in Normal to have the brakes adjusted and the shock absorbers replaced. When defendant returned the next day to pick up his car, Fred Mitchell, the owner, presented him with a $286.80 repair bill. The record is unclear as to whether defendant questioned the amount of the bill at the

time, or whether Mitchell told him that he could not have his car until it was paid. Defendant gave Mitchell his check for the full amount of the bill.

Kim Ketchum, who was called as a witness on behalf of the People and who was bookkeeping supervisor of the Prairie State Bank on February 28, 1979, the date of the defendant's check for the repairs to his auto, gave somewhat imprecise testimony concerning the status of the balance in defendant's checking account at the time defendant wrote and delivered his check to Fred Mitchell for the repairs to his car. We need not try to sort out these facts because defendant conceded in his appellate court brief that when he wrote the check for $286.80, the full amount of the bill, he knew he had insufficient funds in his bank to honor the check and that at that time he intended to stop payment on the check.

Kenneth Winn, a local mechanic, testified for the defendant that a reasonable charge for the parts and work done on defendant's car was about $147. Defendant did not testify.

The trial court gave the jury the following instruction:

"To sustain the charge of deceptive practices under $150, the State must prove the following propositions:

First: that the defendant, with intent to pay for the labor and property of Fred Mitchell, delivered a check upon a bank; and

Second: that the defendant knew the check would not be paid.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

This instruction is a modified form of Illinois Pattern Jury Instruction, Criminal, No. 13.24, Issues in Deceptive Practices (1968). Defendant asserts that the instruction incorrectly states the law because it omits any reference to the intent to defraud, an essential element of the offense of deceptive practices.

We agree with defendant that the instruction was defective. Section 17—1 of the Criminal Code of 1961 provides:

"A person commits a deceptive practice when, *with intent to defraud:*

\* \* \*

(d) With intent to obtain control over property or to pay for property, labor or.services of another he issues or delivers a check or other order upon a real or fictitious depository for the payment of money, knowing that it will not be paid by the depository. \*\*\*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B).

As originally enacted, section 17—1 did not refer to the intent to defraud. The legislature in 1967 amended the section to insert "with intent to defraud" in the introductory phrase. (Ill. Ann. Stat., ch. 38, par. 17—1, Historical Note, at 233 (Smith-Hurd 1977).) The reason for the omission is obscure; it may have been due to inadvertence. The 1967 amendment followed an appellate court decision that held that intent to defraud was a necessary element of deceptive practices, despite the lack of explicit reference to it in the statute, as the court could find no evidence that the legislature intended to alter the elements of the offense as defined in the predecessor statute. (*People v. Billingsley* (1966), 67 Ill. App. 2d 292.) The date of the amendment perhaps explains the omission of the element of intent from the first edition of the pattern instructions, published in 1968. Revised instruction No. 13.24 does contain this element. Illinois Pattern Jury Instructions, Criminal, No. 13.24 (2d ed.

1981).

The committee comments to section 17—1 state that "[s]ubsection (d) codifies the former section 255 [(Ill. Rev. Stat. 1959, ch. 38, par. 255)]." (Ill. Ann. Stat., ch. 38, par. 17—1, Committee Comments—1961, at 232 (Smith-Hurd 1977).) That former section required the intent to defraud. By a further amendment in 1978, the General Assembly added a definition of the intent to defraud:

"To act with the 'intent to defraud' means to act wilfully, and with the specific intent to deceive or cheat, for the purpose of causing financial loss to another, or to bring some financial gain to oneself. It is not necessary to establish that any person was actually defrauded or deceived." (Ill. Ann. Stat., ch. 38, par. 17—1 (Smith-Hurd Supp. 1981).)

It is clear that the intent to defraud is an essential element of the offense of deceptive practices. It is equally clear that the intent to defraud is a mental state distinct and different from the mental state of knowledge that the check will not be paid by the depository, also required by the section. It is quite possible to possess the one mental state without the other, as when one consciously writes a check for more than the balance in one's account, intending to deposit funds to cover it, or agreeing with the payee that the latter not present it immediately but hold it as a note. (See *People v. Billingsley* (1966), 67 Ill. App. 2d 292; *People v. Balalas* (1929), 334 Ill. 444 (decided under the statute which was the predecessor to section 255, which is codified by the current section 17—1(d).) In such cases there is no intent to defraud, nor can it be inferred from the issuer's knowledge that his check is not good. Similarly, one cannot infer that because payment on a check was later stopped, the drawer issued it intending to defraud the payee. Especially where there is a dispute whether a debt is owed, such an inference seems contrary to common sense. (See *Pratt v. Kilborn Motors, Inc.* (1977), 48 Ill. App. 3d 932.) The jury should

have been instructed that to find defendant guilty of a deceptive practice it must find that—in addition to issuing a check with the intent to pay for Mitchell's labor and property, and with knowledge that it would not be paid—the defendant had the intent to defraud.

Since defendant did not object at trial, it is necessary to determine whether the defect in the instruction is a substantial one, rising to the level of plain error, which can be noticed by this court. Ordinarily, if errors in instructions are not objected to at trial, they are waived on appeal; however, "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." 73 Ill. 2d R. 451(c).

The interests of justice demand that the rule of waiver be modified, in criminal cases, where necessary to ensure the fundamental fairness of the trial. (*People v. Roberts* (1979), 75 Ill. 2d 1, 15; *People v. Parks* (1976), 65 Ill. 2d 132, 137.) Fundamental fairness includes, among other things, seeing to it that certain basic instructions, essential to a fair determination of the case by the jury, are given. Instructions on the elements of the offense are among these basic instructions, and we have recognized that the trial court has responsibility for ensuring that they are given. (*People v. Roberts* (1979), 75 Ill. 2d 1, 13.) The failure correctly to inform the jury of the elements of the crime charged has been held to be error so grave and fundamental that the waiver rule should not apply. (*People v. Jenkins* (1977), 69 Ill. 2d 61, 66-67; *People v. Davis* (1966), 74 Ill. App. 2d 450; *People v. Lewis* (1969), 112 Ill. App. 2d 1.) It is of the essence of a fair trial that "the jury not be permitted to deliberate a defendant's guilt or innocence of the crime charged without being told the essential characteristics of that crime." *People v. Lewis* (1969), 112 Ill. App. 2d 1, 11.

In *People v. Jenkins* we reversed a conviction because the defendant *might* have been convicted on the basis of a jury instruction from which an essential element of the

crime was omitted. (*People v. Jenkins* (1977), 69 Ill. 2d 61, 67.) In the case at hand, we cannot say that a properly instructed jury might not have acquitted the defendant, based on a lack of proof beyond a reasonable doubt that he intended to defraud Mitchell. (*People v. Joyner* (1972), 50 Ill. 2d 302, 307.) The principal contested issue relevant to defendant's culpability was whether he had the intent to defraud. We think that fundamental fairness required that the jury be instructed on this issue.

Jury instructions that incorrectly define the offense cause prejudice to a criminal defendant far more serious than instructions that do not include a definition of a term (*People v. Underwood* (1978), 72 Ill. 2d 124 (failure to define "reasonably believes")), or that omit an instruction on a collateral issue (*People v. Parks* (1976), 65 Ill. 2d 132 (failure to instruct on weight to be given accomplice testimony)). The complete omission of an issue as central to the criminal trial as a part of the definition of the crime charged deprives the jury of the guidance it must have properly to decide the case. (*People v. Jenkins* (1977), 69 Ill. 2d 61, 66; *cf. People v. Parks* (1976), 65 Ill. 2d 132, 138.) Our recent holding in *People v. Tannenbaum* (1980), 82 Ill. 2d 177, is consistent with this view. There, the jury was given all instructions essential to determine the defendants' guilt or innocence of theft; the lack of an instruction on the element of the value of the property stolen did not affect that determination. Further, in *Tannenbaum* there was no dispute as to the value of the property. Here the omission removed from the jury's consideration a disputed issue essential to the determination of defendant's guilt or innocence.

The appellate court, on the basis of our holding in *People v. Cook* (1980), 81 Ill. 2d 176, correctly reversed the circuit court's order forfeiting defendant's bond to reimburse the county for the services of the public defender. *People v. Ogunsola* (1980), 91 Ill. App. 3d 26, 32.

Accordingly, that portion of the appellate court's judgment concerning the bond is affirmed, and that portion of the appellate court's judgment affirming defendant's conviction is reversed. The judgment of the circuit court of McLean County is reversed, and the cause is remanded to that court for a new trial.

*Appellate court affirmed in part and reversed in part; circuit court reversed; cause remanded.*