2020 IL App (2d) 160753-U
No. 2-16-0753
Order filed June 22, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-1941 |
| ANTHONY D. WADE, | ) ) ) | Honorable John J. Kinsella, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The omission of language in a jury instruction, directing the jury to determine whether defendant made certain admissions, was erroneous, but did not constitute second-prong plain error. Defendant did not show ineffective assistance of counsel, where trial counsel's failure to object to the given instruction did not prejudice defendant, as the evidence of his guilt was overwhelming. Affirmed.

¶ 2    Following a jury trial, defendant, Anthony D. Wade, was convicted of burglary (720 ILCS 5/19-1(a) (West 2014)) and two counts of retail theft (720 ILCS 5/16-25(a)(1) (West 2014)). The trial court merged the retail-theft offenses with the burglary conviction and sentenced defendant to five years' imprisonment. Defendant appeals, arguing that either plain error occurred or he

received ineffective assistance of counsel when the jury was not instructed in accordance with Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.06-3.07), because the instruction that was given did not instruct the jurors that it was for them to decide whether defendant actually made the statements in question. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with two counts of retail theft and one count of burglary. The charges stemmed from an incident that occurred on July 20, 2015, at a TJ Maxx store in Bloomingdale.

¶ 5     Prior to trial, the trial court granted the State's motion to introduce evidence of defendant's prior conviction for retail theft for impeachment and to show *modus operandi*, motive, intent, or absence of mistake. Trial occurred on May 4, 2016.

¶ 6                        A. State's Case - Officer Jason Bastin

¶ 7     Oswego police officer Jason Bastin testified about defendant's prior conviction. He investigated a theft that occurred at the Oswego TJ Maxx store on March 17, 2008. The complaining witness pointed to a vehicle involved in the theft, and Officer Bastin observed that defendant was the driver and that there were two other people in the car. Defendant denied being involved in the theft. Officer Bastin arrested defendant and, during questioning at the police station, defendant admitted to driving two other people (who had been arrested) to the Oswego TJ Maxx for the purpose of committing a theft. Defendant stated that he dropped them off and waited in his car until he received a phone call, after which he pulled up to the store and the others brought out items in a shopping cart and placed them in his car. Defendant drove them away. Defendant further told officer Bastin that he specifically wanted his co-defendants to steal a couple of purses for him. Office Bastin testified that, during a search of defendant's car, he recovered three purses,

numerous clothing items, and a theft-detection removal device.  Defendant told officer Bastin that he obtained the device from a friend who worked at a store that went out of business and that he used it to remove security tags from stolen items.  Officer Bastin identified the written statement defendant gave related to the 2008 incident.

¶ 8                                B. Josh Francis

¶ 9      Josh Francis, a theft and fraud investigator with TJ Maxx's loss-prevention office, testified about his investigation of the 2015 incident at the Bloomingdale store.  After receiving information that the suspects left the store with handbags, Francis reviewed the store's video-surveillance tapes.  The video was admitted into evidence and played for the jury.

¶ 10     The video shows defendant, wearing a New Orleans Saints t-shirt, and another man, entering the store.  The other man has a shopping cart.  Defendant goes to the purse section and removes a blue purse from a rack and carries it while he continues to browse in the purse section.  He walks out of camera view.  Later, defendant re-enters the frame, empty-handed, followed by the other man, who is pushing a shopping cart with several items in it, including a blue purse similar to the purse defendant had been holding.  The two men browse in the purse section and then walk out of the frame.  Next, the video shows defendant exiting the store, empty-handed.  Then, the other man is shown in the purse area, taking several items that appear to be purses, including the blue bag, and hanging them on his arm.  He walks out the front door and turns right.  Thereafter, a black sedan appears from the left and travels rightward past the store entrance.

¶ 11     Francis testified that he reviewed video footage of all the cash registers in the store around the time that the two men were in the store and never saw either man purchase anything.  Through his investigation, Francis learned that purses were returned without receipts later that same day at the TJ Maxx stores in New Lenox (about 30 minutes away), Romeoville, and Tinley Park.  He

traveled to the stores and obtained surveillance footage and receipts from those transactions. The videos, along with still photographs therefrom, were admitted into evidence and published. In each, a man wearing a New Orleans Saints t-shirt and appearing similar to the man in the Bloomingdale surveillance video is depicted, returning purses.

¶ 12     Francis further testified that, when a customer wants to return an item without a receipt, the store manager has discretion to refuse the return. If the manager approves the return, the customer must provide identification and the manager records the customer's name and address in a computerized refund-management system. At the New Lenox store, the staff declined the return. At the Tinley Park and Romeoville stores, the man was given $430.97 (for three handbags) and $162.74 (for one handbag), respectively, including taxes, in store credit in exchange for the returned purses.

¶ 13     When he completed his investigation, Francis prepared a report of his findings. He turned over the report, receipts, videos, and all other information he had gathered to the Bloomingdale police department.

¶ 14                                     C. Detective Anthony Svoboda

¶ 15     Bloomingdale detective Anthony Svoboda testified that he investigated the July 20, 2015, theft from the Bloomingdale TJ Maxx store. He initially reviewed surveillance footage from the Bloomingdale store and, about one month later, Francis's file, which included surveillance video and stills from the other stores. The file included defendant's name and an address in Aurora. The information was provided by the person (whom Svoboda identified as defendant after viewing the videos, where the same person wore a black New Orleans Saints t-shirt in all videos) who returned the purses to the Tinley Park and Romeoville stores.

¶ 16   On August 26, 2015, Svoboda and detective David Spradling went to the address on record for defendant in Aurora.  They left a business card with an older female who advised them that defendant was not home.  A short time later, defendant called Svoboda and stated he would speak with the detectives.  When the detectives returned to defendant's house, defendant was alone on his front porch.  While standing on the front porch of the house, Svoboda told defendant that he was investigating a retail theft that happened at the TJ Maxx store and that defendant was not under arrest and did not have to speak to him.  Defendant said he understood and agreed to speak with the detectives.  Sometime after the conversation began (*i.e.*, "at some point"[1]), a woman Svoboda believed to be defendant's sister joined them on the porch.

¶ 17   According to Svoboda, defendant stated that he drove his black Dodge Stratus to the Bloomingdale store with Cameron Mathews and Jamar Davis.  Mathews told defendant that he would give him $100 to take part in a theft.  Defendant and Mathews went inside and selected some purses, while Davis waited in the car.  Defendant walked out of the store empty-handed and waited in the car.  He explained that he did not carry anything out of the store, because he did not want to get in trouble for retail theft.  Mathews came out with the purses, got in the car, and they left.  Defendant took one of the purses and returned it at a different store for a $150 merchandise credit.  Since Mathews never paid him, defendant used the credit to buy clothes for himself.  Svoboda showed defendant the still photographs taken from the videos from the Bloomingdale,

<hr>

[1] When asked, "Is it fair to say that some time had passed before this individual, this third female individual came into the conversation?", Svoboda replied, "Yes."  On cross-examination, defense counsel asked, "Can you estimate about how long that gap of time is?", and Svoboda replied, "You know I really can't."

Tinley Park, and Romeoville stores, and defendant identified himself as the person in each photograph and admitted he made other transactions and received store credit for them, which he had used to buy clothes. Defendant did not provide a written statement.

¶ 18    The State rested, and the trial court denied defendant's motion for a directed verdict.

¶ 19                    D. Defendant's Case – Sondra Brown

¶ 20    Sondra Brown, defendant's sister, testified on defendant's behalf that she was present for the conversation between defendant and the detectives on the porch of defendant's house. When the police arrived at the house, she was upstairs. She joined the conversation shortly after it began. When asked, "Do you have any estimate about the amount of time that [defendant] was with the police before you joined them?", Brown replied, "Not that long because I just put on my shoes and went downstairs. Long enough to walk down a flight of stairs basically." According to Brown, the conversation lasted 30 minutes to one hour, and the detectives did most of the talking.

¶ 21    Brown testified that she did not hear defendant say anything about selecting purses at TJ Maxx or returning the purses for store credit; about Mathews getting into defendant's car with purses; or about Mathews promising defendant $100. She did not hear any conversation about defendant receiving money from Mathews or TJ Maxx or him waiting in the parking lane prior to Mathews exiting the store. Nor did she hear defendant or the detectives use Mathews' name at all, but the detectives mentioned Davis and tried to get defendant to give them the name of the third person.

¶ 22    On cross-examination, Brown stated that she only spoke to defendant about this case that day on the porch when the detectives were there. She did not contact anyone about being present for the conversation with police until the day before defendant's trial, even though she knew her

brother had been arrested and his case was set for trial. She stated that he did not learn until about three weeks ago that the case was set for trial.

¶ 23    Brown further testified that the detectives told defendant that they knew it was him in the photos and that they did not ask if it was him. (She agreed that defendant is the person in the photographs.) She also testified that defendant did not admit or deny being in the photos, but she agreed telling an investigator from the State's Attorney's office that defendant's body language acknowledged that he was the person in the photos. Brown also testified that the detectives did not specifically reference purses, but spoke only of stolen merchandise, and they left without arresting defendant. (Defendant was arrested in late October.) When asked, "You agree with me your brother was involved?", Brown replied, "Uh-huh."

¶ 24            E. State's Rebuttal – Detective David Spradling

¶ 25    Detective David Spradling testified in rebuttal that he was present for the conversation with defendant on defendant's porch. He related statements substantially similar to detective Svoboda's testimony.

¶ 26            F. State's Attorney Investigator Robert Guerrieri

¶ 27    Du Page County State's Attorney investigator Robert Guerrieri testified that he assisted prosecutors in their cases and that he was present for a conversation with Brown the previous day. According to Guerrieri, Brown stated that defendant's body language acknowledged that it was him in the photographs when police were at his house.

¶ 28            G. Closing Arguments

¶ 29    During closing arguments, the State argued that defendant and Mathews entered the store with a plan to steal purses and that, by doing so, defendant was accountable for Mathew's walking

out with unpaid-for purses. In support, the State relied on the detectives' testimony that defendant admitted his involvement in the planning and commission of the offense.

¶ 30    Defense counsel argued that the State's case rested on showing that defendant acted in concert with Mathews, but that it had failed to do so. Counsel argued that the detectives fabricated defendant's admission to fit the surveillance footage and that Brown's testimony supported that theory. Counsel also asserted that the only evidence of a common scheme were the alleged admissions defendant made during the porch interview, but that the interview was not recorded and the State did not present corroborating testimony from Mathews. Counsel also argued that, if defendant had actually confessed, it was peculiar that he was not arrested until two months later. Counsel also pointed out that the Bloomingdale surveillance video did not show defendant placing any purses in a shopping cart.

¶ 31                                H. Jury Instructions

¶ 32    The court instructed the jury about defendant's statements concerning the offenses. The instruction tracked some of the language of IPI Criminal No. 3.06-3.07, but omitted the optional language that it was for the jury to determine whether defendant made the statements. Defense counsel did not object to the State's tendered instruction.

¶ 33                        I. Verdict and Subsequent Proceedings

¶ 34    The jury found defendant guilty of all three counts. The trial court denied defendant's motion for a new trial. At sentencing, the trial court merged the two retail theft convictions into the burglary conviction and sentenced defendant to five years' imprisonment. Defendant appeals.

¶ 35                                II. ANALYSIS

¶ 36    Defendant argues that he is entitled to a new trial due to plain error and/or ineffective assistance of counsel, where the jury was provided an incomplete version of IPI Criminal No. 3.06-

3.07, specifically, without the bracketed language from the pattern instruction that would have allowed the jury to consider whether defendant made the admissions the State attributed to him. For the following reasons, we reject defendant's claims.

¶ 37                                     A. Plain Error

¶ 38     Defendant maintains that his primary defense was that the State failed to prove that he was acting in agreement with Mathews and that the only evidence to show that he was—his alleged admissions during the porch interview—were fabricated. He points to Brown's testimony that she was present when the police questioned defendant on the porch and did not hear defendant make any of the admissions Svoboda claimed he had made. Defendant notes that the jury received an incomplete instruction addressing his possible statements, where it did not instruct the jury to determine whether or not defendant actually made the statements. As such, the jury was not properly instructed, depriving defendant of his right to present a complete defense and to a fair jury trial. Defendant concedes that defense counsel did not object to the failure to include the bracketed language and requests that we review the error for plain error.

¶ 39     We begin by reviewing plain-error principles.

> "To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion. *People v. Belknap*, 2014 IL 117094, ¶ 66 (citing *People v. Enoch*, 112 Ill. 2d 176, 186 (1988)). Failure to do either results in forfeiture. There is, however, a well-established exception to that principle. Illinois Supreme Court Rule 615(a) provides that insubstantial errors 'shall be disregarded' but that substantial or what have become known as plain errors 'may be noticed although they were not brought to the attention of the trial court.' Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). As the language of the rule indicates, a reviewing court may exercise discretion and

excuse a defendant's procedural default. *People v. Clark*, 2016 IL 118845, ¶ 42. We have traditionally identified two instances when it is appropriate to do so: (1) when 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error,' or (2) when 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (quoting *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)). We recently reaffirmed this view of the plain error doctrine. See *People v. Fort*, 2017 IL 118966, ¶ 18 (quoting *Herron*, 215 Ill. 2d at 186-87)." *People v. Sebby*, 2017 IL 119445, ¶ 48.

¶ 40    Similarly, in the jury-instruction context, the failure to ask for an instruction at trial and raise the issue in a posttrial motion results in the issue being forfeited. *People v. Anderson*, 325 Ill. App. 3d 624, 636 (2001). However, where instructional errors are so grave that they affect the requirements of a fair and impartial trial, the plain-error doctrine set forth in Illinois Supreme Court Rule 451(c) (eff. July 1, 2006) provides an exception to the forfeiture rule. That rule states that substantial defects in criminal jury instruction "are not waived by failure to make timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. July 1, 2006). This rule is meant to correct grave or serious errors and errors in cases so factually close that fundamental fairness requires that the jury be properly instructed. *Sargent*, 239 Ill. 2d at 189. The rule is coextensive with the plain-error clause of Rule 615(a). *Id.*

¶ 41    The first step under either prong of the plain-error doctrine is determining whether there was a clear or obvious error at trial. *Piatkowski*, 225 Ill. 2d at 565. The next step depends upon the defendant's argument. Here, defendant argues that the error qualifies as a second-prong plain

error, because it was clear and obvious error that denied him the ability to present a complete defense, thus, denying him a fair trial and impacting the integrity of the judicial process. Under a second-prong plain-error analysis, prejudice is presumed, "because of the importance of the right involved." *People v. Sargent*, 239 Ill. App. 3d 166, 191 (2010).

¶ 42 Jury instructions must accurately convey the "essential characteristics" of the charged crime. (Internal quotation marks omitted.) *People v. Ogunsola*, 87 Ill. 2d 216, 222 (1981). In the context of second-prong plain-error analysis of alleged jury-instruction errors, the supreme court has stated:

> "The function of jury instructions is to convey to the jurors the law that applies to the facts so they can reach a correct conclusion. The erroneous omission of a jury instruction rises to the level of plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Id.* at 191.

The court also noted that the foregoing standard "is a difficult one to meet." *Id.* (referencing case law that has held that it is not necessarily plain error to omit the definition of a term or element of an offense).

¶ 43 We review the trial court's decision whether to give a jury instruction for an abuse of discretion. *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009). However, we review *de novo* the question whether an instruction accurately conveyed the law. *Herron*, 215 Ill. 2d at 174.

¶ 44 IPI Criminal No. 3.06-3.07, entitled Statements By Defendant, provides:

> "You have before you evidence that [(the) (a)] defendant made [a] statement[s] relating to the offense[s] charged in the [(indictment) (information) (complaint)]. It is for you to determine [*whether the defendant made the statement[s], and if so,*] what weight

- 11 -

should be given to the statement[s].  In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made."  (Emphasis added.)  IPI Criminal No. 3.06-3.07.

¶ 45    The Committee Note to the instruction provides that, "[t]he bracketed phrase in the second sentence should be deleted only when the defendant admits making all the material statements attributed to him."  IPI Criminal No. 3.06-3.07, Committee Note.

¶ 46    Here, the jury was given the following instruction:

"You have before you evidence that the defendant made statements relating to the offenses charged in the indictment.  It is for you to determine what weight should be given to the statements.  In determining the weight to be given to these statements, you should consider all of the circumstances under which they was [*sic*] made."

¶ 47    It is well established that a defendant is entitled to have the jury instructed on the theory of his or her case.  *People v. Gilliam*, 172 Ill. 2d 484, 519 (1996).  It is also well established that the failure to include the bracketed language in IPI Criminal No. 3.06-3.07 does not warrant reversal, where the defendant presented no evidence that he or she denied making the subject statements.  See, *e.g.*, *People v. Echols*, 382 Ill. App. 3d 309, 317-18 (2008) (holding that, forfeiture aside, where the defendant did not present any evidence that he did not make the statement, the bracketed phrase was properly omitted; cross-examination of police officer did not amount to evidence that the defendant did not make the statement; refusing to follow *People v. Richmond*, 341 Ill. App. 3d 39 (2003)); *People v. Ramos*, 318 Ill. App. 3d 181, 188 (2000) (even if not forfeited, instruction properly given without bracketed language, where the defendant presented no evidence that he did not make the statements); *People v. Moore*, 294 Ill. App. 3d 410, 417 (1998) (omission of bracketed phrase not erroneous, where the defendant presented no evidence that he denied making

statement); *People v. Garner*, 248 Ill. App. 3d 985, 992-93 (1993) (omission of bracketed phrase in instruction not erroneous, where the defendant did not testify to deny making statement and where there was no other evidence raising the question of whether he made the statement); *People v. Jefferson*, 152 Ill. App. 3d 351, 353-54 (1987) (where defendant did not testify and presented no other evidence suggesting he did not make the statements, no error in giving instruction without the bracketed phrase; further rejecting the defendant's argument that he should not be penalized for invoking his privilege not to testify, where court may, in its discretion in absence of testimony contradicting the police, accept the officers' testimony); *People v. Fleming*, 103 Ill. App. 3d 194, 198 (1981) (where the defendant did not take the stand at trial to deny making a statement to police, and where there was no other evidence presented raising a question as to whether he made the statement, the jury "was not aware of the possibility that [the] defendant denied making the statement," no error in deleting the phrase that would have informed the jury that it was for them to decide whether statements were made; to hold otherwise would confuse the jury by making it decide an issue not properly before it).

¶ 48                                        1. Error

¶ 49     We first consider whether error occurred.  Defendant relies on *Richmond*.  In *Richmond*, the defendant was convicted of two counts of predatory criminal assault of a six-year-old female. The defendant had given a written statement to police, admitting involvement.  The statement was read to the jury.  The defendant did not testify at trial or present any witnesses on his behalf. Defense counsel cross-examined the officers about whether the statement was videotaped and whether the defendant was given the option of writing out the statement himself or having it tape recorded.  During closing arguments, defense counsel argued that the defendant did not make the statement attributed to him.  The trial court gave IPI Criminal No. 3.06-3.07 without the bracketed

language.  At the instruction conference, defense counsel objected to the omission of the bracketed language, but did not raise the issue in his posttrial motion (arguing only that the court erred in overruling objections to the instruction).  During deliberations, the jury asked whether the defendant was given the opportunity to write out his statement, and the trial court instructed the jury to consider the evidence before it.

¶ 50    On appeal, the defendant argued that the trial court erred in giving the instruction without the bracketed language and that he was prejudiced by the error, as evidenced by the jury's question. The reviewing court first determined that the issue was preserved for appellate review.  *Richmond*, 341 Ill. App. 3d at 51.  Next, reviewing the case law that established that there is no error in omitting the bracketed language when the defendant does not deny making the statement, the *Richmond* court added that it did not interpret the cases to hold that the defendant must take the stand in order to deny the statement.  *Id.* at 52.  The court held that defense counsel's cross-examination of the officers supported the defendant's assertion that all or part of his statement was fabricated, where they testified that they wrote out the statement and that it was not verbatim and was not tape recorded or videotaped.  *Id.*  Thus, there was error in overruling the objection to the instruction.  *Id.*  "While the inference drawn by defense counsel rested on a thin foundation, it contained enough vitality for presentation to the jury."  *Id.*  However, the court further held that the error was harmless, where the evidence of the defendant's guilt was "extremely strong" and where the jury's question showed that it was considering the circumstances under which the statement was made.  *Id.* at 52-53.  Thus, had the jury been given the proper instruction, the result would have been the same.  *Id.* at 53.

¶ 51    Justice Hoffman specially concurred, asserting that he would find no error in the given instruction.  *Id.* at 54 (Hoffman, J., specially concurring).  He noted that case law has consistently

held that the omission of the bracketed language was appropriate where the defendant presents no evidence that he or she did not make the statement. *Id.* (Hoffman, J., specially concurring). He disagreed that the jury could have inferred from the cross-examination of the officers that all or part of the defendant's statement was fabricated. *Id.* at 55 (Hoffman, J., specially concurring). Their testimony, in Justice Hoffman's opinion, could not support a conclusion that it was probable that the statement was fabricated in whole or in part. *Id.* (Hoffman, J., specially concurring). He agreed with the majority that the defendant need not testify in order to deny a statement, but he characterized the majority's reasoning as constituting speculation, innuendoes, and insinuations that were unsupported by any evidence. *Id.* (Hoffman, J., specially concurring). In his view, the State's evidence that the defendant made the statement was uncontradicted and the fact that it was not taped or in his own handwriting did not constitute evidence supporting a reasonable inference that it was fabricated, though they were circumstances that the jury could consider in determining the weight to be given the statement. *Id.* at 55-56 (Hoffman, J., specially concurring).

¶ 52   Defendant argues that, contrary to the *Richmond* majority's instruction, the trial court here did not allow the jury to consider whether defendant made any statements at all. This deprived him, he urges, of a fair trial, where the incomplete instruction skewed the jurors' credibility determinations by denying them the ability to decide for themselves whether defendant had made any of the admissions the officers claimed. He asserts that jurors must be free to consider the circumstances under which a statement was made, particularly whether it was made at all. This was necessary in this case because the alleged admissions, defendant notes, were used by the State to show that he and Mathews planned the offenses prior to entering the store, thus, establishing defendant's guilt under the State's accountability theory. As defense counsel argued in closing, the State's other evidence only showed defendant walking out of the store, alone and empty-

handed. While the videos and receipts from the other stores showed, defendant returning purses, there was no evidence that those purses were the ones stolen by defendant from the Bloomingdale store. The statement, defendant urges, was the crucial evidence against him and the incomplete version of IPI Criminal No. 3.06-3.07 prevented him from presenting a complete defense.

¶ 53    The State responds that there was no error because, at trial, defendant did not deny making the statements to police officers on his porch and did not present any evidence of a denial. Rather, he called Brown as a witness. She was not present for the entirety of defendant's conversation with police and did not testify that defendant ever denied making admissions to the police about his involvement in the stealing of items from TJ Maxx and returning them for store credit. Brown, according to the State, testified that she was present for part of the conversation and that she did not hear defendant admit to anything about the theft. She also admitted that she spoke to an investigator for the State the day before defendant's trial and told him that defendant acknowledged to police with his body language that he was depicted in the photos from TJ Maxx. The State argues that Brown's testimony and defense counsel's closing argument that the police were not believable when they testified about their conversation with defendant do not support defendant's claim. The State further asserts that *Richmond* is an outlier opinion and is not persuasive. It points to Justice Hoffman's special concurrence in that case and further points to *People v. Echols*, 382 Ill. App. 3d 309 (2008), where the court rejected a defendant's reliance on *Richmond*.

¶ 54    *Echols* is a residential-burglary case, where the police asserted that the defendant admitted to the crime, but they did not have the defendant memorialize the statement in writing or on videotape. Choosing to review the forfeited issue, the reviewing court held that the omission of the bracketed language in IPI Criminal No. 3.06-3.07 was not erroneous. *Id.* at 316. The court acknowledged that *Richmond* provided some support for the defendant's argument, but that, as the

special concurrence noted in that case, case law consistently held to the contrary. *Id.* The *Echols* court concluded that, when the defendant presents no evidence that he did not make the statement, the bracketed language is properly omitted and the cross-examination of the officer was not sufficient to constitute evidence that the defendant did not make the statement. *Id.* at 318. Justice Hall specially concurred, arguing that the omission of the language was erroneous, but the error was harmless. *Id.* at 321-22 (Hall, J., specially concurring). Justice Hall noted that both the *Richmond* majority and the special concurrence agreed that case law did not require a defendant to give up his or her constitutional right to remain silent. *Id.* at 321 (Hall, J., specially concurring). Justice Hall would have held that, where there were no witnesses to the defendant's statement and without giving up his right not to testify, his only recourse was to challenge the detective's testimony via cross-examination. *Id.* at 322 (Hall, J., specially concurring). Justice Hall also read the Committee Comment to the instruction as a requirement, and Justice Hall would have held that equating the failure to put forth evidence—which would have consisted only of the defendant's own testimony—to an admission that he made the statement violated the defendant's right not to testify. *Id.* (Hall, J., specially concurring).

¶ 55    Here, the State maintains that the jury heard testimony from two officers about their conversation with defendant about the crime, including defense counsel's cross-examination about how that oral conversation was memorialized in police reports. The jury also heard Brown's account of the part of the conversation for which she was present. This did not amount, the State argues, to evidence that defendant denied making statements to the police. Thus, in its view, there was no error.

¶ 56    We conclude that omission of the bracketed language from IPI Criminal No. 3.06-3.07 constituted error. The Committee Note to the instruction provides that the bracketed language

"should be deleted only when the defendant admits making" the statements attributed to him. IPI Criminal No. 3.06-3.07, Committee Note. A defendant need not testify in order to deny making a statement. *Richmond*, 341 Ill. App. 3d at 52. Here, defense counsel cross-examined Svoboda about his interview with defendant on the porch. But, as defendant points out, this was not the entirety of defendant's challenge of the officer's testimony. He also presented Brown's testimony, which contradicted elements of Svoboda's account of the conversation. She testified that she did not hear defendant say anything about selecting purses at the TJ Maxx store, returning purses for store credit, about Mathews getting into defendant's car with purses, or about Mathews promising defendant $100. She also stated that she did not hear any conversation about defendant receiving money from Mathews or hear Mathews' name at all.

¶ 57 The State focuses on the fact that Brown was not present for the entirety of the police's interview of defendant. The evidence, however, shows that Brown was present for essentially all of the conversation. Detective Svoboda testified that she joined the conversation "at some point" and further stated on cross-examination that he could not estimate how much time passed before Brown joined in. However, Brown herself stated that she joined the conversation after putting on her shoes and the time lapse was only as long as it took her to walk down a flight of stairs.

¶ 58 We do not find *Richmond* helpful to our analysis and, thus, do not comment on the propriety of the outcome in that case or the issue whether there was a violation of defendant's right not to testify. In *Richmond*, the defendant presented no evidence that he had not made the statement attributed to him, but merely cross-examined a police officer, which the majority concluded was sufficient as evidence that the defendant did not make the statement. *Richmond*, 341 Ill. App. 3d at 52. Here, in contrast, defendant did present evidence—Brown's testimony—that he did not make admissions to police.

¶ 59    In summary, defendant presented testimony of a denial and it was error to exclude the bracketed language.

¶ 60                                    2. Plain Error

¶ 61    Having determined that the omission of the bracketed language constituted error, we next assess whether it amounted to plain error. Defendant argues that the error in this case qualifies for plain-error review under the second prong of plain error, because it denied him the ability to present a complete defense, thus, denying him a fair trial and impacting the integrity of the judicial process.

¶ 62    Again, prong-two plain error occurs "when a 'clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Piatkowski*, 225 Ill. 2d at 565 (quoting *Herron*, 215 Ill. 2d at 186-87). "If the defendant carries that burden, '[p]rejudice *** is presumed because of the importance of the right involved.' " *Sebby*, 2017 IL 119445, ¶ 50 (quoting *Herron*, 215 Ill. 2d at 187). "This rule does not require that [the] defendant prove beyond doubt that [his or] her trial was unfair because the omitted instruction misled the jury to convict [him or] her. It does require that [he or] she show that the error caused a severe threat to the fairness of [his or] her trial." *People v. Hopp*, 209 Ill. 2d 1, 12 (2004).

¶ 63    Defendant relies on *People v. Turman*, 2011 IL App (1st) 091019. In that case, a jury convicted the defendant of criminal sexual assault, an offense that required a finding that the defendant, while committing an act of sexual penetration, knew that the victim was unable to give knowing consent. The defendant's written statement was introduced during trial. In the statement, the defendant stated that, while having sex with the victim, he knew she was intoxicated, " 'completely out of it,' " and " 'zombie-like.' " *Id.* ¶ 12. During his testimony, however, he denied

making any of the statements. The victim testified that, in between periods of blacking out, she resisted the defendant's aggressive attempts to have sex with her. Police officers testified that she had told them that she did not remember anything about the assault, because she was passed out.

¶ 64 On appeal, the defendant argued that the trial court erred in omitting the bracketed language in IPI Criminal No. 3.06-3.07, to instruct the jury that they could consider whether or not he made the written statements, where, at trial, he testified that he denied making many of the attributed statements to police and the prosecutor. The defendant also denied that the prosecutor re-read the statements to him, even though his signature appeared on every page of the statement. He also denied knowing the definition of the term "inebriated," which appeared in the statement, and that the victim appeared zombie-like. The defendant argued that the erroneous jury instruction foreclosed the jury from considering whether he made only portions of the statements attributed to him. The reviewing court, noting that the issue was forfeited for failure to object during trial or raise it in a posttrial motion, conducted a plain-error analysis. *Id.* ¶ 31. The State argued that the jury was given an instruction on prior inconsistent statements that instructed it to determine whether the witness made the statement, thus, in totality, the jury was properly instructed and any error was harmless and cured by the second instruction. The reviewing court noted that the defendant made a "credible" argument that it was unclear which instruction the jury followed and that the statements at the police station were central to the prosecution's case, and it held that the failure to include the bracketed language was error under both prongs of plain error. *Id.* ¶ 34. The entirety of its analysis is as follows:

"As stated previously, the evidence in this case was closely balanced. We find that this error threatened to tip the scales of justice away from the defendant. We believe that it was important to give the instruction in question and failure to do so deprived the

defendant of a fair trial and impacted the integrity of the judicial process, satisfying the second prong of the plain error doctrine. The defendant's statements made at the police station were, as the defendant argues, central to the State's case. Therefore, proper jury instructions related to those statements were imperative. Contrary to the State's contention, the jury instruction regarding prior inconsistent statements did not cure the error.

We hold that the two errors, which we have determined constituted plain errors, were sufficiently serious as to require a reversal of the defendant's conviction and sentence." *Id.* ¶¶ 34-35.

¶ 65    Here, defendant maintains that this case warrants the same result as in *Turman*. A crucial piece of his defense, he contends, was to challenge the statements attributed to him by the police, which, according to the State, proved that defendant and Mathews together had planned to commit the theft at the Bloomingdale TJ Maxx store. Yet, the trial court prevented the jury from determining whether defendant made the statements by instructing the jury with IPI Criminal No. 3.06-3.07 without the bracketed language that directs the jury to determine whether he made the statements.

¶ 66    The State responds that any error in omitting the bracketed language did not amount to second-prong plain error, because the jury was properly instructed regarding their ability to determine the credibility of and weight to be given to defendant's statements and witness testimony. The State contends that, although the instruction directed the jurors to determine the weight to be given the statements, it did not instruct them that they were to take as fact the officers' testimony concerning defendant's oral statements during the porch conversation. The instruction, the State further argues, also did not require the jury to disregard Brown's testimony about the portion of the conversation for which she was present. The jurors were instructed, the State notes,

to determine the *weight* to afford to defendant's statements, but they were not required to accept defendant's statements as recounted by the officers as fact, which defense counsel pointed out during closing argument. The State further notes that the jury was instructed in accordance with Illinois Pattern Jury Instruction, Criminal, No. 1.02 (hereinafter IPI Criminal No. 1.02), which states that they "are the judges of the *believability* of the witnesses and of the *weight* to be given to the testimony of each of them." (Emphasis added.) The State also contends that *Turman* is distinguishable because the defendant in that case testified and expressly denied making the statements attributed to him by the State. Also, in finding error, the *Turman* court determined that the evidence was closely balanced and that the failure to include the bracketed language, along with another instructional error concerning the definition of reasonable doubt, threatened to tip the scales of justice, deprived the defendant of a fair trial, and impacted the integrity of the judicial process. *Turman*, 2011 IL App (1st) ¶¶ 28-34. The State argues that, here, in contrast, defendant focuses only on the second prong of plain error and, in any event, the record shows that the evidence of his guilt was overwhelming.

¶ 67    We cannot conclude here that, regardless of the closeness of the evidence, the error was so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process. There is not a serious risk, in our view, that the jury incorrectly convicted defendant "because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Ogunsola*, 87 Ill. 2d at 191. As the State notes, the jury here was instructed that it was to determine the weight to be given to defendant's statements. In making these determinations, the jury clearly had the option to place zero weight on the police testimony about defendant's statements, thereby, determining that defendant did not make the admissions. Also, as the State notes, the jury was given IPI Criminal No. 1.02, which instructed the jury that it was to determine

the believability and weight of witness testimony. This instruction repeated and reinforced IPI Criminal No. 3.06-3.07's direction that it was the jury's duty to assess witness testimony. Further, defense counsel pointed out in closing argument that the detectives fabricated defendant's admission to fit the surveillance footage and that Brown's testimony supported that theory. Counsel also pointed out that the porch interview was not recorded, that the State did not present corroborating testimony from Mathews, and that defendant was not charged until two months after the interview. Again, although not evidence, the closing-argument comments had the effect of emphasizing to the jury that it had the option to put zero weight on the police testimony. Finally, we find *Turman*, upon which defendant relies, distinguishable. That case involved a conflicting set of jury instructions, where one omitted the instruction to determine whether the defendant made the statement and another instruction, which addressed prior inconsistent statements, included it. *Turman*, 2011 IL App (1st) 091019, ¶ 34; see also *People v. Minter*, 2015 IL App (1st) 120958, ¶¶ 56-61 (distinguishing *Turman*, because that case involved a confusing and conflicting set of instructions, where one set omitted the instruction to determine whether the defendant made the statement and the other set included it). The erroneous omission of the bracketed language in this case did not severely threaten the fairness of defendant's trial.

¶ 68    In summary, defendant has not shown prong-two plain error.

¶ 69                           B. Ineffective Assistance of Counsel

¶ 70    Defendant argues in the alternative that he is entitled to a new trial, because his trial attorney was constitutionally ineffective for failing to submit the correct jury instruction and failing to object to the trial court's incorrect instruction. For the following reasons, we disagree.

¶ 71    In criminal prosecutions, a defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Peterson*, 2017 IL

120331, ¶ 79. Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984) (adopting the *Strickland* standard)).

¶ 72    To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant. *People v. Domagala*, 2013 IL 113688, ¶ 36. "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* ¶ 36 (quoting *Strickland*, 466 U.S. at 687). A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome' of the proceeding." *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs of the *Strickland* standard to prevail on an ineffective assistance of counsel claim, and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness. *Simpson*, 2015 IL 116512, ¶ 35. Whether a defendant sufficiently alleges ineffective assistance of counsel is a legal question subject to *de novo* review. *People v. Taylor*, 237 Ill. 2d 68, 75 (2010).

¶ 73    Defendant contends that trial counsel was ineffective for not ensuring that the jury was given the complete instruction. Throughout trial, the defense's theory that defendant was not accountable for Mathews relied on the argument that defendant did not make the admissions the State attributed to him. Defense counsel, defendant notes, told the jury during opening statements that the case involved some statements that may or may not have been made; counsel's cross-examination of Svoboda centered on the accuracy and credibility of Svoboda's report describing defendant's alleged admissions; Brown, the only defense witness, testified that defendant did not

make the inculpatory statements Svoboda claimed he made; and, in closing argument, defense counsel asserted that the police had fabricated the statements and that, without the statements, the State could not prove defendant's guilt. Defendant asserts that defense counsel's failure to object to the proposed instruction shows that counsel's performance fell below an objective standard of reasonableness.

¶ 74 Addressing prejudice, defendant argues that counsel's failure to ensure that the jury had the complete instruction to consider the defense was prejudicial. The jury heard evidence that defendant made the statements confessing his involvement in the offenses, but also heard Brown testify that he did not make such statements. Any jurors with doubts about whether defendant made the admissions, defendant suggests, were prevented by the improper instruction from acting on those doubts. Thus, it is reasonably probable that a properly-instructed jury would have acquitted him.

¶ 75 The State responds that defendant cannot show prejudice, because the evidence of his guilt was overwhelming. Thus, there is no reasonable probability that the result of the trial would have been different, even if a version of the instruction with the bracketed language had been given.

¶ 76 We conclude that trial counsel's performance fell below an objective standard of reasonableness when counsel failed to object to the proposed instruction, but that defendant's *Strickland* argument ultimately fails because he cannot show prejudice. We agree with the State that, excluding the statements attributed to him by the State, the evidence of defendant's guilt was overwhelming. The surveillance video footage and the photographs admitted at trial from the Bloomingdale TJ Maxx store show defendant and Mathews enter the store, browse in the purse area, and select purses that Mathews then steals from the store after defendant had left the premises. The stolen purses included a blue purse that defendant had held at one point. Additional evidence

shows defendant in several other TJ Maxx stores shortly after his visit to the Bloomingdale store, where he attempts to return and, in two cases, successfully returns, the purses, without receipts and for store credit. Furthermore, other-crimes evidence was admitted of a similar theft (that also included purses from a TJ Maxx store), as evidence of *modus operandi*, motive, intent or absence of mistake and for impeachment. We believe that this other-crimes evidence showed defendant's *modus operandi* and intent, specifically, premeditation prior to his and Mathews' entry into the store. This other-crimes evidence was substantial evidence of defendant's intent to commit a theft before he entered the store. See, *e.g.*, *People v. Johnson*, 2019 IL 123318, ¶ 16 ("entering a retail store with the intent to commit a theft amounts to the crime of burglary"). Given the foregoing and excluding the statements the State attributed to defendant, there was overwhelming evidence of defendant's guilt and no reasonable probability that a properly-instructed jury would have acquitted him. Thus, defendant cannot show prejudice to succeed on an ineffective-assistance claim.

¶ 77                                    III. CONCLUSION

¶ 78    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 79    Affirmed.